Booth, Chief Justice,
delivered the opinion of the court:
This suit is based upon the act of June 10, 1922 (42 Stat. 625), as amended by the act of May 31, 1924 (43 Stat. 250), and the act of May 26, 1926 (44 Stat. 654), it being known as a dependent mother case.
The facts found by the Commissioner are not traversed, and it is conceded by the defendant that except for the period of time beginning October 1, 1919, and ending November 21,1921, the plaintiff is entitled to prevail. A counterclaim is filed by the defendant, alleging that the sum of $787.26 was allowed the plaintiff for the above period when in fact his mother was not dependent upon him for her chief support.
The facts upon which defendant relies to sustain the counterclaim are these: The plaintiff’s father, Ernest Martin, was, with the exception of one month, employed and paid as an assistant pathologist of the Central State Hospital, Indianapolis, Indiana, a salary of $125 per month and *626 room and board, during Out of this salary plaintiff’s father retained monthly the sum of $15 and regularly paid over to his wife $110, and this he continued to do until on or about March 1, 1932, when at the age of sixty-eight, he was stricken with paralysis and rendered unable to engage in any income-producing employment. His health and physical condition precluded labor of any kind.
From October 1, 1919, to November 21, 1921, the plaintiff was paid on account of commutation of quarters, heat, and light, under the acts cited, the sum of $787.26. During this period the plaintiff’s family consisted of his father, mother, and two sisters, Charlotte Martin and Susan Martin. The family owned no homestead, living in rented quarters. The father and mother did own an outlying unimproved lot 60 x 160 feet on Manning Hoad, Indianapolis, valued at approximately $1,000, but without market value, repeated attempts to sell it having failed.
Charlotte Martin, some time prior to March 1, 1932, became of unsound mind and has since been confined in the Central State Hospital at Indianapolis. Susan Martin, the other daughter, attended school at Johns Hopkins University, spending the summer months with her father and mother. The findings show that since her graduation she has been teaching, and contributing out of her salary to her parents’ support.
The indisputable evidence is that during the period of the counterclaim, the Martin family, i. e., the father, mother, and two daughters, incurred living expenses of $183.50 a month, of which amount $40 per month was for the rental of a homestead, and an equal amount for food, the remaining incidental expenses exhibiting no extravagances and obviously essential to carry on the household. During this period the plaintiff regularly contributed $50 per month, except during the period of his father’s illness he increased his contribution to $75 per month, making a total contribution of $1,375.
This court has held that it is impossible to predicate the issue of dependency upon a pro rata basis. Freeland v. United States, 64 C. Cls. 364, 367. It is equally difficult *627 “to standardize the facts which disclose a condition designated in the law as ‘chief support.’ ” In the case of Rieger v. United States, 69 C. Cls. 682, 637, the court said:
“We think the words ‘chief support’ used in the statute should be given their ordinary and well-known meaning. ‘Chief’ support means ‘main’ support or ‘principal’ support. We think a mother is dependent for her ‘chief support’ if someone else is required to furnish most, or the greater part, of the funds necessary for her reasonable support.”
The record discloses a family group, as previously observed, of the mother and two daughters, the father during the period of the counterclaim residing without additional expense elsewhere than at home, and he himself contributing $110 per month toward the living expenses of his family. This contribution was a substantial one. It obviously went a long -ways in the maintenance of the family, evidenced by their frugal manner of living, and was, of course, expended for their mutual welfare. To say that it did not alleviate the dependency of the mother for support and assure her of support during its continuance would be contradictory to the record of facts. Precisely what portion of it inured to her individual benefit may not be ascertained. It is, we think, sufficient to say that the family group during this period lived within this contribution, creating a monthly deficit of less than $25, and it is apparent that the father’s contribution constituted the major portion of the income received by the family.
The acts of Congress involved in this case impose upon the plaintiff the burden of proving that- his contributions constituted the mother’s chief support. This burden, we think, the plaintiff in this case has failed to sustain for the period of the counterclaim. The court.upon the record is unable to conclude that the plaintiff’s mother was principally dependent for support upon his contributions during this period, and the counterclaim will be allowed.
Plaintiff’s counsel insist that under the act of May 26, 1926 (supra), a judgment should be awarded. This contention is rested upon an argument that the facts show that plaintiff “responded to a needy family condition.” We think the case of Odlin v. United States, 74 C. Cls. 633, holds *628 to the contrary, and that the contention of plaintiff is untenable.
Inasmuch as this claim is a continuing one, judgment must be suspended awaiting a report from the General Accounting Office in accord with this opinion, and with leave to the plaintiff to take testimony showing a continuance of the state of dependency, if his mother is still living. It is so ordered.
Whaley, Judge; Williams, Judge; Littleton, Judge; and Geeen, Judge, concur.